# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **STEPHANIE BRITT,** | § | |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | **CIVIL NO. 1-19-CV-781-RP** |
| | § | |
| **WALGREEN CO.,** | § | |
| *Defendant* | § | |

## ORDER

Before the Court are Defendant's Motion to Exclude Plaintiff Stephanie Britt's Expert Testimony and Opinions, filed October 20, 2021 (Dkt. 55); Defendant's Motion to Exclude Opinions and Testimony of Frank Kuwamura, M.D. Related to Reasonableness of Medical Bills, filed October 22, 2021 (Dkt. 56); and the associated response and reply briefs. The District Court referred the motions and related filings to the undersigned Magistrate Judge for disposition, pursuant to 28 U.S.C. § 636(b)(1)(A), Federal Rule of Civil Procedure 72, and Rule 1(c) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas ("Local Rules").

## I.    General Background

Plaintiff Stephanie Britt filed this premises liability lawsuit against Defendant Walgreen Co. ("Walgreens") after she slipped and fell inside a Walgreens store in Kyle, Texas.[1] Plaintiff alleges that on September 22, 2017, at approximately 9:09 p.m., she "slipped on water or water and partially melted ice directly in front of the ice freezer" when she was walking down the frozen food aisle, causing her to suffer serious bodily injuries. Dkt. 32 at 1-2. In her Amended Complaint,

---

[1] Plaintiff originally filed this lawsuit in state court. Defendant removed the case to federal court on the basis of diversity jurisdiction, pursuant to 28 U.S.C. § 1332(a). Dkt. 1.

Plaintiff alleges that Walgreens carelessly and negligently (1) "permitted a slick liquid to be present on the floor in an area where customers traversed," (2) "failed to warn customers of the presence of the slick liquid on the floor of said aisle," and (3) "failed to clean the slick liquid on the floor of said aisle after it knew or should have known that the slick liquid presented a danger to its customers." Amended Complaint, Dkt. 23 ¶ 9. Plaintiff seeks monetary damages for her bodily injuries, medical expenses, pain and suffering, disability in the past and future, and loss of earning capacity.

On September 22, 2020, Defendant moved for summary judgment, arguing that Plaintiff had failed to come forward with competent evidence that Walgreens had actual or constructive knowledge of the wet floor. Dkt. 29. The undersigned issued a Report and Recommendation that the District Court deny Defendant's motion for summary judgment on the basis that Plaintiff had presented sufficient evidence to create a fact issue as to whether Walgreens had constructive knowledge of the wet floor. Dkt. 42. The District Court adopted the Report and Recommendation and denied Defendant's motion for summary judgment. Dkt. 47. This case is set for jury trial on January 10, 2022. Dkt. 67.

On May 15, 2020, Plaintiff filed her Amended Expert Disclosures designating Dr. Frank Kuwamura, M.D., one of Plaintiff's treating orthopedic surgeons, to testify as to Plaintiff's diagnosis, prognosis, past and future medical care, and reasonable and necessary medical costs and care. Dkt. 55-1. Plaintiff also designated herself as an expert on how long it takes for ice to melt. *Id.* Defendant now moves to exclude Plaintiff's expert testimony altogether, and Dr. Kuwamura's testimony related to the reasonableness of Plaintiff's medical bills.

## II.   Legal Standards

Under Federal Rule of Evidence 702, district courts act as gatekeepers to determine the relevance and reliability of expert testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152

(1999); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). District courts are given "wide latitude in determining the admissibility of expert testimony, and the discretion of the trial judge will not be disturbed on appeal unless manifestly erroneous." *U.S. v. Cooks*, 589 F.3d 173, 179 (5th Cir. 2009). Rule 702 provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Thus, under Rule 702, "expert testimony is admissible only if the proponent demonstrates that: (1) the expert is qualified; (2) the evidence is relevant to the suit; and (3) the evidence is reliable." *Gallagher v. Lucas*, No. SA-20-CV-00072-FB, 2020 WL 6385291, at *2 (W.D. Tex. Oct. 30, 2020).

As noted, before a district court may allow a witness to testify as an expert, it must first determine "that the proffered witness is qualified to testify by virtue of his 'knowledge, skill, experience, training, or education.'" *Cooks*, 589 F.3d at 179 (quoting FED. R. EVID. 702). "To qualify as an expert, the witness must have such knowledge or experience in his field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth." *U.S. v. Bourgeois*, 950 F.2d 980, 987 (5th Cir. 1992) (cleaned up). "A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject." *Cooks*, 589 F.3d at 179. The party proffering a witness as an expert has the burden of laying a foundation that establishes the witness is qualified by a

preponderance of the evidence. *Houston Aquarium, Inc. v. Occupational Safety & Health Rev. Comm'n*, 965 F.3d 433, 439 (5th Cir. 2020); *U.S. v. Griffith*, 118 F.3d 318, 322 (5th Cir. 1997).

The proponent of expert testimony also bears the burden of establishing the reliability of the expert's testimony. *Sims v. Kia Motors of Am., Inc.*, 839 F.3d 393, 400 (5th Cir. 2016). This determination of reliability includes a preliminary determination of "whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592-93. Trial courts ordinarily apply four factors when considering the reliability of scientific evidence: (1) whether the technique can be or has been tested; (2) whether it has been subjected to peer review or publication; (3) whether there is a known or potential rate of error; and (4) whether the relevant scientific community generally accepts the technique. *Id.* This test of reliability is flexible, and these factors "neither necessarily nor exclusively apply to all experts or in every case." *Kumho Tire*, 526 U.S. at 141. "Because there are areas of expertise, such as the social sciences in which the research, theories and opinions cannot have the exactness of hard science methodologies, trial judges are given broad discretion to determine whether *Daubert*'s specific factors are, or are not, reasonable measures of reliability in a particular case." *U.S. v. Simmons*, 470 F.3d 1115, 1123 (5th Cir. 2006) (internal quotation marks and citations omitted).

Notwithstanding the testing of an expert's qualification, reliability, and admissibility, "the rejection of expert testimony is the exception rather than the rule." FED. R. EVID. 702 advisory committee's note to 2000 amendment. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

### III.   Analysis

Local Rule CV-7(g) provides that a court "may refuse to hear or may deny a nondispositive motion unless the movant advises the court within the body of the motion that counsel for the parties have first conferred in a good-faith attempt to resolve the matter by agreement and, further, certifies the specific reason that no agreement could be made." Defendant's Motions to Exclude lack certificates of conference, and, therefore, fail to comply with Local Rule CV-7(g). The Court could deny the Motions on this basis alone. *See, e.g., Rodriguez v. Taylor, Bean & Whitaker Mortg. Corp.*, No. SA-12-CV-0039-OLG, 2012 WL 12888786, at *1 (W.D. Tex. Aug. 31, 2012) (denying motion to strike because movant failed to include certificate of conference).

In addition, under the Amended Scheduling Order:

> An objection to the reliability of an expert's proposed testimony under Federal Rule of Evidence 702 shall be made by motion, specifically stating the basis for the objection and identifying the objectionable testimony, within **11 days** from the receipt of the written report of the expert's proposed testimony, or within **11 days** from the completion of the expert's deposition, if a deposition is taken, whichever is later.

Dkt. 28 ¶ 6. Neither Plaintiff nor Dr. Kuwamura filed an expert report. Plaintiff was deposed on July 7, 2020, and Dr. Kuwamura was deposed on August 26, 2021. Thus, both of Defendant's Motions to Exclude are untimely. While the Court granted Defendant an extension of time as to its Motion to Exclude Dr. Kuwamura's testimony, Defendant did not seek, and the Court did not grant, an extension of time as to Defendant's Motion to Exclude Plaintiff's expert testimony. Therefore, the Court also could deny that motion as untimely.

Mindful of its "special obligation" to act as a gatekeeper and exclude unreliable and irrelevant expert testimony, the Court addresses the merits of the Motions to Exclude nonetheless. *Carlson v. Bioremedi Therapeutic Sys., Inc.*, 822 F.3d 194, 199 (5th Cir. 2016) (quoting *Kumho Tire*, 526

U.S. at 147). Defendant is warned that failure to comply with the Local Rules and the Court's deadlines may result in denial of future motions and imposition of appropriate sanctions.

## A.  Defendant's Motion to Exclude Plaintiff's Expert Testimony

Plaintiff designated herself as an expert witness under Rule 702[2] to testify "regarding how long it takes for Walgreens ice to melt based on her experience of taking Walgreens ice cubes and placing them on the floor at various places in her house." Dkt. 55-1. Defendant argues that "Plaintiff's opinions must be excluded because she has no specialized knowledge, training, education, or experience qualifying her to opine ice melting." Dkt. 55 at 1. The Court agrees.

Plaintiff has offered no evidence demonstrating that she has any specialized knowledge, training, education, or experience qualifying her to offer expert testimony on how long it takes ice to melt. During her deposition, Plaintiff testified that her highest level of education is a high school diploma. Plaintiff's Tr. (Dkt. 55-2) 11:4-8. In addition, Plaintiff's work history is entirely unrelated to her expert designation. Plaintiff testified in her deposition that she worked as a purchasing agent for a tile company for four years, but quit working after she had a baby. *Id.* at 11:11-25. Since that time, Plaintiff has raised her son and "helped [her] parents in their office." *Id.* at 12:2-4. Plaintiff has offered no evidence how any of these jobs qualify her to perform a scientific experiment to determine the amount of time ice allegedly takes to melt. *See McDuffie v. Hillstone Rest. Grp., Inc.*, No. CV 16-6733, 2017 WL 11540139, at *2 (E.D. La. Sept. 8, 2017) (excluding proposed expert's testimony regarding the sufficiency of the illumination of the stairs in a slip and fall case where proposed expert had no experience as a lighting or electrical expert); *Walker v. Target Corp.*,

---

[2] Federal Rule of Evidence 701 governs the admissibility of opinion testimony by lay witnesses. "The distinction between lay and expert witness testimony is that lay testimony results from a process of reasoning familiar in everyday life, while expert testimony results from a process of reasoning which can be mastered only by specialists in the field." *U.S. v. Yanez Sosa*, 513 F.3d 194, 200 (5th Cir. 2008) (cleaned up). "[A]ny part of a witness's opinion that rests on scientific, technical, or specialized knowledge must be determined by reference to Rule 702, not Rule 701." *Id.*

No. 2:16-CV-42-KS-MTP, 2017 WL 2604097, at *5 (S.D. Miss. June 14, 2017) (holding that proposed expert in slip and fall case was not qualified to provide expert testimony regarding safety procedures employed at retail stores where he had no specialized training or education in that field); *cf. Santos v. Posadas De Puerto Rico Assocs., Inc.*, 452 F.3d 59, 64 (1st Cir. 2006) (finding witness who held a doctorate in mechanical engineering, was certified by the National Academy of Safety, and had professionally analyzed 2,000 slip-and-fall accidents qualified to offer expert testimony in a slip-and-fall case).

Plaintiff has failed to demonstrate that she has any specialized knowledge based on her experience, training, or education that would qualify her to offer expert testimony and opinions as to how long it takes for ice to melt. As a result, Plaintiff's purported expert opinions and testimony must be excluded.[3] *Cooks*, 589 F.3d at 179.

### B.  Defendant's Motion to Exclude Dr. Kuwamura

In March 2017, Plaintiff underwent a laminectomy and discectomy to treat a disc herniation at the L5-S1 joint of her spine. Dkt. 61-1 at 4. Plaintiff's treating orthopedic surgeon, Dr. Zachary Garza, noted that the surgery was successful. *Id.* But Plaintiff alleges that she suffered additional injuries to her back when she slipped and fell on the melted ice at Walgreens some six months after the surgery. *Id.* Dr. Garza eventually referred Plaintiff to Dr. Kuwamura, his colleague and an orthopedic spine surgeon, for treatment. An MRI of Plaintiff's spine showed disc herniations at both joints L4-L5 and L5-S1, and Dr. Kuwamura advised that Plaintiff undergo another surgery to reconstruct her lumbar spine. *Id.* On February 10, 2021, Dr. Kuwamura performed a 360-degree lumbar fusion surgery on Plaintiff. *Id.*

---

[3] Because the Court finds that Plaintiff is not qualified to testify as an expert, the Court need not address Defendant's alternative arguments for exclusion.

Plaintiff has designated Dr. Kuwamura to testify regarding her "past and future medical care, reasonable and necessary medical costs and care, her diagnosis, her prognosis, causation and other matters set forth in his report and medical records." Dkt. 56-1 at 2. Although Dr. Kuwamura did not prepare a written expert report, Plaintiff has produced a letter from Dr. Kuwamura detailing the cost estimate for Plaintiff's surgery and related medical services. Dkt. 61-1 at 8. In that letter and in a more detailed assessment of Plaintiff's medical history, Dr. Kuwamura opines that Plaintiff's fall in the Walgreens store "exacerbated her previous condition at L5/S1" and "also significantly worsened her pathology at both L4/L5 and L5/S1," which "resulted in her need for lumbar fusion." *Id.* at 3-4, 8.

Dr. Kuwamura testified at deposition that the surgery he performed on Plaintiff was reasonable and necessary. Kuwamura Tr. (Dkt. 61-3) 33:6-18. Dr. Kuwamura further testified that Plaintiff was billed $105,337.20 for the surgery and related medical expenses, which included his surgeon and co-surgeon fees, X-Rays, surgical hardware, anesthesia, and post-operative care. *Id.* at 37:21-38:8. Dr. Kuwamura testified that all of these fees were reasonable and necessary for the services provided to Plaintiff. *Id.* at 38:18-39:5.

Defendant argues that Dr. Kuwamura's testimony regarding whether the expenses Plaintiff incurred were reasonable should be excluded because Dr. Kuwamura is not qualified to opine regarding the reasonableness of medical bills provided for medical services outside his area of expertise. Defendant further argues that Dr. Kuwamura's testimony is "completely devoid of any discernible methodology." Dkt. 56 at 5.

Courts in the Western District of Texas have found that a treating physician need not be a billing expert in order to provide reliable and admissible opinions on the reasonableness of medical charges when that physician is familiar with the amounts usually charged for similar treatments.

In *Cantu v. Wayne Wilkens Trucking, LLC*, 487 F. Supp. 3d 578, 584 (W.D. Tex. 2020), the defendant, like Defendant here, argued that the plaintiff's treating surgeon's testimony regarding the reasonableness of the plaintiff's medical costs were unreliable because the surgeon was "not a billing specialist, has never been a hospital administrator, and is not familiar with the recovery rates of hospitals, anesthesiologists, MRI facilities, or chiropractors, and does not have familiarity of the recovery rates of particular providers." The district court rejected this argument and permitted the treating surgeon to testify, reasoning:

> Dr. Misra has been performing spinal surgeries since 1996; his over twenty-four years of experience billing and reviewing the bills of his patients form the basis of the reliability of his testimony regarding Plaintiff's medical costs. Though it is true that Dr. Misra is not a billing specialist, he testified that his role as a treating physician allows him to regularly review and become familiar with reasonable charges regarding treatments for neck and spinal injuries. Dr. Misra's opinion is based on his "specialized knowledge" as a practicing spinal surgeon familiar with the type of injury Plaintiff sustained and the treatment such injuries regularly requires.

*Id.; see also Grant v. CRST Expedited, Inc.*, No. 1:18-CV-433, 2021 WL 1151560, at *4-9 (E.D. Tex. Jan. 28, 2021) (holding that orthopedic surgeon with 28 years of experience was qualified to make determinations regarding necessary medical treatment for plaintiff's injuries and usual and customary costs of such treatment).

Dr. Kuwamura is a board certified orthopedic spinal surgeon who has been performing back surgeries for approximately 20 years. Dkt. 61-3 at 5:6-6:12. As noted, Dr. Kuwamura performed the surgery at issue here and testified that Plaintiff's bill for his surgery and related medical expenses were reasonable and necessary for the services provided. *Id.* at 38:18-39:5. Clearly, Dr. Kuwamura is qualified to testify as to the reasonableness of medical bills associated with a surgery he performed and performs on a regular basis.

Moreover, "[a]s a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *U.S. v. Hodge*, 933 F.3d 468, 478 (5th Cir. 2019) (quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)), *cert. denied*, 141 S. Ct. 131 (2020). Defendant is free to cross-examine Dr. Kuwamura at trial if Defendant believes that Plaintiff's medical bills were unreasonable. As the Supreme Court has made clear, the district court's role as gatekeeper is not intended to serve as a replacement for the adversary system; rather, vigorous cross-examination is the appropriate means of "attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. Based on the foregoing, Defendant's Motion to Exclude Dr. Kuwamura's testimony is **DENIED**.

## IV.   Conclusion

In summary, Defendant's Motion to Exclude Plaintiff Stephanie Britt's Expert Testimony and Opinions (Dkt. 55) is **GRANTED**, and Defendant's Motion to Exclude Opinions and Testimony of Frank Kuwamura, M.D. Related to Reasonableness of Medical Bills (Dkt. 56) is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk **REMOVE** this case from the Magistrate Court's docket and **RETURN** it to the docket of the Honorable Robert Pitman.

**SIGNED** on November 16, 2021.

SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE