IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| STEPHANIE BRITT, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 1:19-CV-781-RP |
| | § | |
| WALGREEN CO., | § | |
| | § | |
| Defendant. | § | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

On January 18 and 19, 2022, the Court held a bench trial in this matter. (Dkts. 106, 107).

Plaintiff Stephanie Britt ("Britt") and Defendant Walgreen Co. ("Walgreen's") submitted post-trial

briefs. (Pl.'s Trial Br's., Dkts. 110, 112; Def.'s Trial Br., Dkt. 11; Pl.'s Proposed Findings of Fact,

Dkt. 119; Def.'s Findings of Fact, Dkt. 120). The parties' initial trial briefs focused on the issue of

liability, at the Court's request. (*See* Pl.'s Trial Br's., Dkts. 110, 112; Def.'s Trial Br., Dkt. 11). Having

considered the evidence and testimony presented at trial, the arguments of counsel, the briefing, and

the governing law, the Court enters the following findings of fact and conclusions of law.

## I. BACKGROUND

This case is about a slip and fall that happened at a Walgreen's store in Kyle, Texas. Britt

allegedly sustained injuries from her fall and sued Walgreen's for damages on July 15, 2019. (Orig.

Pet., Dkt. 1-2). On August 2, 2019, Walgreen's removed the case to federal court. (Dkt. 1). With

leave from the Court, Britt filed her first amended complaint on June 8, 2020. (Dkt. 23). A few

months later, Walgreen's filed a motion for summary judgment. (Dkt. 29). On July 9, 2021, the

Court denied Walgreen's motion, finding that a fact issue existed as to whether Walgreen's had

constructive knowledge of the water on the floor. (Dkt. 47). Several months later, the Court denied

Walgreen's motion for reconsideration. (Dkt. 97). On December 17, 2021, the Court held the final

pretrial conference and ruled on the pending motions in limine. (*See* Dkt. 101). A jury trial was set

for January 18, 2022. (Dkt. 104). The parties then filed a joint advisory stating that "[d]ue to the rise

in COVID-19 cases, the Parties have agreed to waive a jury trial and proceed with a bench trial via

Zoom." (Dkt. 103). The Court reset the trial as a bench trial.

## II. SUMMARY OF THE EVIDENCE

### A. Testimony Presented at Trial

During Britt's case, the Court heard live testimony from Britt, video deposition testimony

from Shay Anderson, video deposition testimony from Walgreen's employee Ashley Alexander,

video deposition testimony from Walgreen's employee Miguel Arredondo, video deposition

testimony from Walgreen's employee Brittny Whatley, video deposition testimony from Dr. Frank

Kuwamara, live testimony from Plaintiff's expert Michael Stinson, live testimony from Plaintiff's

expert Marcus Reading, live testimony from Britt's husband Charles Britt, and video deposition

testimony from Dr. Zachary Garza. During the Walgreen's case, the Court heard video deposition

testimony from Ashley Teal, live testimony from Walgreen's employee Miguel Arredondo, live

testimony from Dr. Adewale Adeniran, live testimony from Dr. Warren Neely, live testimony from

Walgreen's expert Robert Cox, live testimony from Walgreen's expert Stephen Horner. The Court

heard additional live testimony from Britt during her rebuttal case.

### B. The Fall at Walgreen's

On September 22, 2017, Britt entered a Walgreen's store in Kyle, Texas at approximately

8:46 p.m. (Tr. Day 1, at 42–43). Plaintiff testified that she went to Defendant's store with her mother

and daughter to purchase a dental pick to finish vinyl work. (*Id.* at 40). Britt's mother and daughter

went to go look for ice cream while she went in search of a dental pick. (*Id.*). At some point, Britt

began walking through the store to rejoin her family. (*Id.* at 41). While walking towards her family,

Britt slipped on a puddle of water on the floor next to the ice freezer at about 9:09 p.m. (*Id.*; P-2, P-24).

Before Britt slipped and fell, video evidence showed that another customer left the store with a bag of ice and a case of beer at 8:44 p.m. (P-26). Walgreen's employees testified that Walgreen's employees knew that when ice was taken out of the freezer, from time to time or "every once in a while," ice would fall on the floor. (Alexander Dep., P-33, at 17; Arredondo Trial Testimony, Tr. Day 2, at 29; Whatley Dep., P-34, at 9). The Court accepts the testimony from Walgreen's employees regarding how often ice would fall out of the freezer when someone removed a bag of ice.

Arredondo, a former Walgreen's employee, testified during Walgreen's case that on the night of the fall, he was working at the Walgreen's as the "floor person" and would have been in charge of cleaning bathrooms and taking out the trash. (Tr. Day 2, at 22). He stated that a few minutes before the fall he would have entered the stockroom to get trash bags to take out the trash. (*Id.* at 23–24). The stockroom is located by the cooler doors where the fall occurred. (*Id.* at 23). And, when he went to the stockroom, he "always look[ed] left and right" down the aisle with the ice freezer. (*Id.* at 24). Then Arredondo testified at trial that he remembered that he looked down the aisle where Britt fell about ten minutes before and did not see any clear liquid substance, water, or ice cubes on the floor. (*Id.* at 24–25). However, when Arredondo was deposed, he said he did not know when the floor was last inspected, (*id.* at 25), and no other Walgreen's employee testified that Arredondo said he had checked the floor ten minutes before the fall. The Court finds that Arredondo's testimony is neither credible nor consistent with other evidence in the case.

## III. DISCUSSION

### A. Premises Liability Under Texas Law

To establish her claim for premises liability, Plaintiff must prove four elements: "(1) the property owner had actual or constructive notice of the condition causing the injury; (2) the condition posed an unreasonable risk of harm; (3) the property owner failed to take reasonable care to reduce or eliminate the risk; and (4) the property owner's failure to use reasonable care to reduce or eliminate the risk was the proximate cause of injuries to the invitee". *McCarty v. Hillstone Rest. Group, Inc.*, 864 F.3d 354, 358 (5th Cir. 2017) (quoting *Henkel v. Norman*, 441 S.W.3d 249, 251–52 (Tex. 2014)). A threshold requirement in a premises liability case is that a plaintiff must show the landowner had actual or constructive notice of the premises defect. *See, e.g., Beavers v. Flying J Inc.*, 1:05-CV-244, 2006 WL 8440669, at *6 (E.D. Tex. May 25, 2006) (citing *Cadenhead v. Hatcher*, 13 S.W.3d 861, 864 (Tex. App.—Fort Worth 2000, no pet.) and *Richardson v. Wal-Mart Stores, Inc.*, 963 S.W.2d 162, 165 (Tex. App.—Texarkana 1998, no pet.)). In this case, since Walgreen's did not have actual notice of the water on the floor, Britt must establish that Walgreen's had constructive notice.

To establish a property owner's constructive notice of an unreasonable risk of harm, a plaintiff must show that "it is more likely than not that the condition existed long enough to give the premises owner a reasonable opportunity to discover it." *Garcia v. Wal-Mart Stores Texas, L.L.C.*, 893 F.3d 278, 279 (5th Cir. 2018) (quoting *Wal-Mart Stores, Inc. v. Reece*, 81 S.W.3d 812, 814 (Tex. 2002)). Texas adopted the "time-notice" rule because "temporal evidence best indicates whether the owner had a reasonable opportunity to discover and remedy a dangerous condition." *Reece*, 81 S.W.3d at 816. "What constitutes a reasonable time for a premises owner to discover a dangerous condition will, of course, vary depending upon the facts and circumstances presented." *Id.* "Without some temporal evidence, there is no basis upon which the factfinder can reasonably assess the opportunity the premises owner had to discover the dangerous condition." *Reece*, 81 S.W.3d at 816. Moreover,

proximity alone cannot establish constructive notice because it only indicates "that it was possible for the owner of the premises to discover the dangerous condition, not that the owner reasonably should have discovered it." *Pena v. Home Depot U.S.A., Inc.*, 32 F. Supp. 3d 792, 797 (S.D. Tex. 2013) (citing *Reece*, 81 S.W.3d at 816) (emphasis in original). Thus, when determining whether a defendant had constructive knowledge of a hazardous condition, a court must consider evidence of (1) longevity; (2) proximity, and (3) conspicuity. *Pena*, 32 F. Supp. 3d at 797 (citing *Reece*, 81 S.W.3d at 815–17).

When, as here, a plaintiff relies on circumstantial evidence to prove constructive notice, "the evidence must establish that it is more likely than not that the dangerous condition existed long enough to give the proprietor a reasonable opportunity to discover the condition." *Wal-Mart Stores, Inc. v. Gonzalez*, 968 S.W.2d 934, 936 (Tex. 1998). If circumstantial evidence "supports only the possibility that the dangerous condition existed long enough to give [the premises owner] a reasonable opportunity to discover it," the premises owner cannot be liable based on such evidence. *Id.* A plaintiff must demonstrate that the circumstantial evidence "is sufficiently non-speculative to create a fact issue." *Garcia*, 893 F.3d at 281. In determining whether the premises owner had a reasonable opportunity to discover the hazard, courts analyze "the combination of proximity, conspicuity, and longevity." *Wal-Mart Stores, Inc. v. Spates*, 186 S.W.3d 566, 567–68 (Tex. 2006).

**B. Britt Fails to Establish Constructive Notice**

The parties disagree whether Britt has met her burden of establishing that Walgreen's had constructive notice of the water on the floor. Britt heavily relies on *Garcia*, a Fifth Circuit opinion that examined whether a plaintiff had established constructive notice in a slip and fall case. In *Garcia*, the plaintiff slipped and fell inside a Wal-Mart. 893 F.3d at 278. On the day of the fall, at 5:56 a.m., a Wal-Mart employee operated an auto-scrubber machine over the area where the plaintiff later fell at 6:21 a.m. *Id.* That exact spot of the fall was where the floor changed from brown tile to white vinyl.

*Id.* All of it was caught on the store's video surveillance. *Id.* Wal-Mart moved for summary judgment, and the district court granted it on the basis that the plaintiff failed to raise a fact issue on Wal-Mart's knowledge of the spill. *Id.* at 278–79. The Fifth Circuit reversed, finding that the plaintiff's narrative was "easily the most plausible." *Id.* at 282. The court explained: "The real question is whether Garcia's entire story, uncorroborated assumptions and all, is more plausible than Wal-Mart's proposed alternatives [that the fluid came from trash bags dragged across the area or a passer-by]. The answer to that question is clearly yes. Garcia's is the only explanation supported by multiple, particularized indicia: The auto-scrubber pauses where the level of the floor changes; liquid tends to accumulate in uneven areas; and, per the post-slip cleanup effort, the spill was a concentrated puddle (rather than a trail created by a leaking garbage bin)." *Id.*

To make a comparison to the facts of *Garcia*, Britt points to seven "particularized indicia" as evidentiary support: "(1) the employees all know that ice can drop on the floor when a bag of ice is removed; (2) a bag of ice was removed from the freezer; (3) Walgreens employees said that the puddles looked the same as the puddles created by melted ice cubes; (4) the small puddles were mere inches away from the freezer door; (5) Ms. Britt slipped and fell on the water or partially melted ice which was inches away from the ice freezer door; (6) Walgreens employees told Sedgewick (Walgreens investigator) that the water on the floor most likely came from taking a bag of ice out of the freezer; and (7) the door video shows that an ice bag was purchased 26 minutes prior to the fall." (Pl.'s Proposed Findings of Fact, Dkt. 119, at 25–26). While the Court does not necessarily disagree that Britt supported her narrative with those particularized indicia, the Court disagrees that those facts, even assuming they were proven during trial, lead to an inference that Walgreen's had constructive notice, as Wal-Mart did in *Garcia*.

In *Garcia*, the district court had additional key evidence before it including: (1) video of the fall, (2) video of the auto-scrubber passing over the area before the fall and pausing briefly where the

floor changed from brown tile to white vinyl, (3) Wal-Mart's policies related to auto-scrubber use, which required that "Wet Floor" signs be placed in areas to be cleaned and that employees mop anything left behind, including in "low spots," and (4) the failure of the Wal-Mart employee who operated the auto-scrubber to check the area for water, mop the "uneven area" where the two types of flooring met, or set out "Wet Floor" signs. *Id.* at 278–79. In this case—even assuming the Court accepts that a customer pulled a bag of ice out of the freezer a bit before Britt's fall—Britt lacks more to corroborate her story that pulling the bag of ice out of the freezer left ice or a puddle of water on the floor. First, Britt lacks a video showing what happened by the ice freezer before Britt fell by it. Second, Walgreen's employees testifying that "from time to time" or "every once in a while" pulling a bag of ice out of the freezer led to ice falling on the floor fails to establish that it more likely than not happened on this occasion minutes before Britt's fall. Third, Walgreen's neither had policies in place that employees should clean or dry the ice freezer area or set out "Wet Floor" signs at the ice freezer nor was there evidence that Walgreen's employees violated a Walgreen's policy with respect to the ice freezer. While it is a somewhat close call, the facts of this case make it challenging to infer that Walgreen's had constructive notice.

Unable to make that inference, the Court finds that Britt's evidence falls short of what is required under Texas law. Having found that the temporal evidence insufficient, the Court does not need to analyze proximity and conspicuity to conclude that Walgreen's is not liable for Britt's fall and the injuries she allegedly sustained as a result of that fall. The Court thus concludes that Britt shall take nothing as to her claims against Walgreen's.

## IV. CONCLUSION

Based on these findings of fact and conclusions of law, the Court finds that Walgreen's is not liable for the slip and fall that allegedly caused Britt's injuries and damages.

A final judgment will be entered separately.

**SIGNED** on August 5, 2022.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE